## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:02CV-32-M**

**JIMMIE R. BURKLOW**                                                              **PLAINTIFF**

**VS.**

**LOCAL 215 INTERNATIONAL**
**BROTHERHOOD OF TEAMSTERS, ET AL.**                      **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Midwestern Teamsters Pension Trust Fund, for judgment as a matter of law based on the Administrative Record [DN 228]; on a motion by Defendant Midwestern for judgment on the pleadings, or in the alternative, for summary judgment [DN 238]; on a motion by Defendant Midwestern to strike Plaintiff's jury demand [DN 229]; and on a motion by Plaintiff, Jimmie R. Burklow, for partial summary judgment against Midwestern as to Counts II and III of the Amended Complaint [DN 235, DN 248].   Fully briefed, these matters are now ripe for decision.

### I.  BACKGROUND

The Plaintiff filed his original Complaint on February 8, 2002, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., relating to his pension funds.  Plaintiff named as defendants his former employers, his international and local unions, and two pension funds into which contributions were to have been made by his employers pursuant to collective bargaining agreements ("CBAs") between his

employers and local unions.

By Memorandum Opinion and Order entered November 22, 2002, the Court dismissed without prejudice the Pension Fund Defendants, Central States, Southeast and Southwest Area Pension Fund and Midwestern Teamsters Pension Fund, because the Plaintiff had failed to exhaust the administrative remedies provided by the plan documents.  The Court then stayed discovery in this matter until Plaintiff exhausted all administrative remedies against the Pension Fund Defendants.  On February 28, 2006, after exhausting all administrative remedies, the Plaintiff filed a First Amended Complaint "rejoin[ing] and reinstate[ing]" Central States and Midwestern as defendants.

In his Amended Complaint, Plaintiff alleges that he worked on an uninterrupted basis from December 3, 1968 through March 15, 2001, under Teamster Union collective bargaining agreements which required pension contributions to be made on his behalf and, as a result, he is entitled to "full pension benefits due him."  (Amended Complaint at ¶¶ 11-16.)  In particular, Plaintiff contends that, although all required contributions were timely paid for him as required by the collective bargaining agreements, "no records exist for any such payments made by American Dairy for [him] from late 1971 until mid 1977." (Id. at ¶ 20.)  Burklow claims that Central States, Central National, and Midwestern should have received contributions on his behalf.  (Id. at ¶ 21.)  However, Plaintiff recognizes that one of the Funds, Central National Life Insurance Pension Fund, has not been located and is not a party to this lawsuit.

Based upon these factual allegations, the Plaintiff asserts an ERISA benefits claim

2

pursuant to the civil enforcement provisions in § 1132(a)(1)(B) of ERISA against the Pension Funds, Central States and Midwestern, alleging that these Pension Funds have wrongfully denied him the full pension benefits which he has earned.  Additionally, Plaintiff asserts claims against all the Defendants alleging that he has not been provided with documentation verifying that contributions were made for the years 1972-77; that the Defendants breached their fiduciary duties under ERISA and state law by failing to secure the employer contributions and/or to monitor or maintain records regarding those contributions; and that the missing contributions have caused his pension accounts to be underfunded.  Plaintiff also alleges that the Defendants violated the civil enforcement provisions in ERISA, 29 U.S.C. § 1132(c), by not supplying him with requested information.  He also seeks penalties and attorney's fees against the Defendants.

The parties have now filed numerous dispositive motions in this matter.  The Court will address all motions relating to Midwestern in this Memorandum Opinion and Order.

## II.  MIDWESTERN'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Burklow contends that he is entitled to full pension benefits for his employment in a Teamster industry from December 8, 1968 though March 15, 2001, and that Midwestern improperly rejected his pension claim.  Pursuant to the guidelines for the disposition of ERISA cases stated in Wilkins v. Baptist Healthcare Systems, Inc., 150 F.3d 609 (6th Cir. 1998), Defendant Midwestern requests that judgment be entered on the administrative record in favor of Midwestern on all Burklow's claims for recovery of benefits brought pursuant to

29 U.S.C. § 1132(a)(1)(B).

### A.  *Burklow's Work History and Pension Contributions*

From December 3, 1968 to August 8, 1977, Burklow was employed by American Dairy and was a member of Teamsters Local 215.   American Dairy was a signatory to collective bargaining agreements with Teamsters Local 215.   The terms of the collective bargaining agreements between Local 215 and American Dairy required American Dairy to contribute money to Central States Pension Fund for its employees from May 1, 1970 to October 20, 1971; to Central National Life Insurance Pension Fund from October 21, 1971 to October 20, 1974; and to Midwestern Teamsters Pension Trust Fund from October 21, 1974 to October 20, 1977.   Burklow was employed by Baskin-Robbins from August 8, 1977 through March 15, 2001, and was a member of Teamsters Local 783.   Pursuant to the terms of the collective bargaining agreement between Local 783 and Baskin-Robbins, Baskin-Robbins contributed money to Central States Pension Fund from August 8, 1977 to March 15, 2001, the date the Baskin-Robbins plant closed.

Central States has a record of all contributions made by American Dairy and Baskin-Robbins on behalf of Burklow from May 1, 1970 to October 20, 1971 and August 8, 1977 to March 15, 2001, respectively.   Central National Life Insurance Pension Fund has not been located and no records have been obtained reflecting contributions made on behalf of Burklow.   Midwestern likewise has no records of contributions made by American Dairy on behalf of Burklow.

4

## B.  *Administrative History*

On April 15, 2003, Plaintiff filed his Application for Retirement Pension Benefit with Midwestern. (Administrative Record, DN 166, at 2.)  On November 10, 2003, the Trustees denied Burklow's pension application finding that "the Fund's records do not indicate that any contributions were ever received on his behalf." (Id. at 149.)  On January 9, 2004, Midwestern through counsel officially denied Burklow's application for benefits explaining in relevant part:

> [T]he Department of Social Security verify that Mr. Burklow was in fact employed at American Dairy from 1968 thru 1977.  The collective bargaining agreement in effect at the time of your client's employment, between American Dairy and the International Brotherhood of Teamsters, Local Union #215, indicated that pension contributions were to begin being made on Mr. Burklow's behalf in October of 1974.  However, no such contributions were ever made on your client's behalf.  Furthermore, irrespective if contributions had in fact been made on your client's behalf, he would still be ineligible for a pension benefit from the Fund. The Midwestern Teamsters Pension Plan provides:
>
> > "[I]n the event of the termination of employment with a Participating Employer of a Participant, for any reason other than death or retirement under the Plan, after completion of ten (10) years of Vesting Service, the Participant shall be entitled, if living on the National Retirement Date, to one hundred percent (100%) of the Accrued Benefit . . ."[1]
>
> As previously stated, Mr. Burklow was employed by American Dairy from 1968 thru 1977.  The collective bargaining agreement became effective in October 1974.   Mr. Burklow was only a participant, requiring a Participating Employer to contribute on his behalf, for a period of three (3) years before termination of employment.  Accordingly, even if contributions

---

[1]The parties have not cited to the location of this provision in the Midwestern Teamsters Pension Plan contained in the Administrative Record.

5

had been received on Mr. Burklow's behalf, he would not have been a vested participant entitled to receive a pension benefit.

(Id. at 151-152.)

On March 18, 2004, Burklow submitted additional information.  By letter dated April 20, 2004, Midwestern through counsel again denied Burklow's application for pension benefits restating the reasons set forth in the first letter. (Id. at 171-172.)  Through August of 2005, Burklow continued to submit additional information to Midwestern.  On September 8, 2005, Midwestern's Board of Trustees reviewed the pension application and additional information submitted in support of Burklow's application and denied his appeal for benefits. (Id. at 244-245.)   On October 25, 2005, Plaintiff was notified of Midwestern's final determination and that he had exhausted the administrative appeals with Midwestern:

> Please be advised that the Pension Fund has no record of receiving any contribution report forms, proof of hours worked, or contributions being made to the Fund.  In addition, even if contributions were made and received by the pension fund in accordance with the applicable collective bargaining agreements, Mr. Burklow would not have vested under the ten (10) year vesting rules, which at that time required that each participant obtain five (5) years of intermediate and future service or "actual service" to receive the credit for the five (5) years of past service.   The five (5) years of intermediate and future service or "actual service" were not obtained by Mr. Jimmie Burklow.

(Id. at 247.)

Following Midwestern's final denial of his claim for pension benefits, Burklow filed his amended complaint asserting his benefit claim pursuant to 29 U.S.C. § 1132(a)(1)(B).

### C.  Standard of Review

A plan administrator's denial of benefits under an ERISA plan "is to be reviewed

under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). See also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 613 (6th Cir. 1998). On the other hand, if the plan vests discretionary authority in the plan administrator, the decision will be reviewed under an arbitrary and capricious standard of review. See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

The language in the Declaration of Trust of Midwestern Teamsters Pension Fund provides in relevant part: "Trustees shall have the full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters." (Administrative Record at 30.) The language of the Trust Agreement clearly grants discretionary authority to Midwestern to interpret the terms of the Trust Agreement and to determine eligibility for benefits. Thus, where the administrator of the plan has discretionary authority in evaluating eligibility for benefits, as in the present case, the Court reviews the denial of benefits under an arbitrary and capricious standard. Wilkins, 150 F.3d at 613.

Generally, a court's review of a decision to deny benefits under a qualified employee benefit plan is limited to the administrative record. Bennett v. Unum Life Insurance Company of America, 321 F. Supp. 2d 925, 928 (E.D. Tenn. 2004); Myers v. Bridgestone/Firestone Long-Term Disability Benefits Plan, 2004 WL 1501631 (E.D. Tenn. June 17, 2004)(citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989)). "The

only exception to the above principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." <u>Wilkins</u>, 150 F.3d at 618.

Plaintiff argues that because the Court permitted limited discovery[2] regarding Plaintiff's allegations of a denial of due process by Midwestern, the Court should depart from the arbitrary and capricious standard of review applicable in ERISA cases and should instead utilize a summary judgment standard of review.  Contrary to Plaintiff's argument, the Sixth Circuit has rejected the use of the summary judgment standard of review in ERISA benefit actions.  <u>Wilkins</u>, 150 F.3d at 619.

The Court will consider the matters outside the administrative record in determining Plaintiff's procedural challenge to the administrator's decision.  However, consideration of these matters does not alter the arbitrary and capricious standard of review.  <u>See</u> <u>Peruzzi v. Summa Medical Plan</u>, 137 F.3d 431, 433 (6th Cir. 1998)(administrator's conflict of interest does not alter the standard of review).

### D.  Discussion

Having established the appropriate standard of review, the Court must now determine

---

[2]The Court granted Plaintiff limited discovery from both Central States and Midwestern regarding their knowledge of (1) the past or present existence of Central National Life Insurance, its successors, and/or any of its trust funds it was to maintain for Plaintiff's retirement; (2) any contributions made on behalf of Plaintiff between October 21, 1971 and October 20, 1977; and (3) the existence of any reciprocal agreements between Central States, Central National, and Midwestern.

whether to uphold Midwestern's decision to deny Plaintiff's claim for pension benefits. "The arbitrary and capricious standard is the least demanding form of judicial review." Hunter v. Caliber Systems, Inc., 220 F.3d 702, 709-10 (6th Cir. 2000). A determination by the administrator to deny benefits which is based upon a reasoned explanation for the outcome and rational in light of the plan provisions must be upheld. Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000). Accordingly, where it is "possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Id.

Burklow argues that Midwestern's denial of pension benefits was arbitrary and capricious because Midwestern should have properly credited Burklow 10 years of pension credits for the years 1968 through 1977; and, as a result, Burklow would be vested under the terms of the Midwestern Plan. Burklow contends that Midwestern's administrative decisions are obviously skewed because they were only based on the available and recorded contributions paid, instead of all the contributions paid by Plaintiff's employer pursuant to the respective collective bargaining agreements. Additionally, Burklow asserts a denial of due process on the part of Midwestern which allegedly affected its ability to fairly and accurately evaluate his claim for pension benefits. Specifically, Burklow argues that the administrative denials by Midwestern were decided without consideration of how Midwestern had previously awarded Burklow's co-workers credit for years of service during the same time period in question. These arguments shall be addressed in turn.

### 1. Midwestern's Plan and Calculation of Burklow's Years of Service Credit

It is undisputed that Plaintiff who is currently 63 years of age was employed full-time by American Dairy from December 3, 1968 to August 8, 1977. The terms of the collective bargaining agreements between Teamsters Local 215 and American Dairy required American Dairy to contribute money to Central States Pension Fund for its employees from May 1, 1970 to October 20, 1971; to Central National Life Insurance Pension Fund from October 21, 1971 to October 20, 1974; and to Midwestern Teamsters Pension Trust Fund from October 21, 1974 to October 20, 1977. Records confirm that American Dairy made the required contributions to Central States from May 1, 1970 to October 20, 1971. No contribution records have been located for Burklow for his employment between October 21, 1971 to October 20, 1977. However, Midwestern now concedes that American Dairy made all the required contributions for Burklow to Central National Life Insurance Pension Fund and Midwestern Teamsters Pension Trust Fund from October 21, 1971 to August 8, 1977. (See, e.g., Defendant Midwestern's Response to Plaintiff's Motion for Partial Summary Judgment as to Counts II and III at 10-12.)

Under Midwestern's Plan, a participant may be entitled to a "Normal Retirement Benefit," an "Early Retirement Benefit," or a "Vested Benefit." In order to qualify for a "Normal Retirement Benefit," a participant must not have "suffered a Permanent Break in Service"[3] and have completed "ten (10) years of Service under the Plan of which at least five

---

[3]The term "Permanent Break In Service" means "the end of the Plan Year prior to attainment of 100 % vesting when a Participant's consecutive Break in Service Plan Years

10

(5) years consist of Years of Intermediate Service, if any, and Years of Future Service, if any." (Calamari Affidavit, § 21 and Administrative Record at 55.)[4] Years of service consists of the sum of a participant's years of past service, intermediate service, and future service. (Calamari Affidavit, § 13 and Administrative Record at 54.)

In order to qualify for an "Early Retirement Benefit," a participant must not have "suffered a Permanent Break in service" and have completed "at least twenty (20) Years of Service; of which at least five (5) years consist of Years of Intermediate Service, if any, and Years of Future Service, if any."  (Administrative Record at 56.)  There is no claim that Plaintiff is entitled to an early retirement benefit. Under the Plan, a participant is entitled to a "Vested Benefit" if the participant has "at least a total of ten (10) years of service consisting of the sum of [the participant's] years of Intermediate Service, if any, plus [a participant's] Years of Future Service, if any."  (Administrative Record at 57.)

With respect to past service, Midwestern's Plan provides that a "Year of Past Service shall be granted for each calendar year prior to the effective date of your Employer's entrance

---

equals or exceeds his years of credited services." (Administrative Record at 52.)

[4] Specifically, this plan provision provides:
If you have not suffered a Permanent Break in Service you shall be eligible to retire voluntarily and receive a Normal Retirement Benefit provided you retire on or after January 1, 1976 and on the later of the following dates:
(1)     attainment of age 65, or
(2)     the earlier of:
(a)     the tenth (10th) anniversary of your participation in the Plan, or
(b)     the completion of ten (10) years of Service under the Plan of which at least five (5) years consist of Years of Intermediate Service, if any, and Years of Future Service, if any.

into the plan that [a participant] had at least one thousand (1,000) Hours of Work within the jurisdiction of the Union and/or Participating Unions."  (Calamari Affidavit at ¶ 15 and Administrative Record at 54.)  The Plaintiff's years of past service would include hours worked for American Dairy in 1969 through 1974, because those are the years prior to American Dairy's entrance into Midwestern's plan.  The Plaintiff's employment with American Dairy from December 3, 1968 through December 31, 1968, is not a year of past service under the Plan because Burklow did not obtain the 1,000 hours required to earn a year of past service (or 500 hours to earn a one half a year of past service).  (Id.)

    With respect to intermediate service, Midwestern's Plan provides that a "Year of Intermediate Service shall be granted for each Plan Year beginning after the effective date of [an] Employer's entrance into the plan and ending with the Plan Year 1975 that [a participant] had at least forty-five (45) weeks of contributions made to the Fund." (Calamari Affidavit at ¶ 16 and Administrative Record at 54.)  Plaintiff earned intermediate service for the year of 1975.  However, the terms of the plan prevent Plaintiff from claiming 1974 as a year of intermediate service.  The Plan provides that "[n]o Intermediate Service shall be granted for any Plan Year for which contributions for less than twenty (20) weeks were made to the Fund on [a participant's] behalf." (Administrative Record at 54.)  Thus, Burklow's service in 1974 qualifies as a year of past service and not intermediate service because American Dairy became obligated to remit contributions beginning on October 21, 1974, which would provide only eleven weeks of contribution, instead of the required twenty weeks.

With respect to future service, Midwestern's Plan provides that future service is granted "for each Plan Year commencing on or after January 1, 1976 that [a participant has] at least nineteen (19) Weeks of Service." (Calamari Affidavit at ¶ 17 and Administrative Record at 54.) "Week of Service" is a "week in which the Participant has performed at least one Hour of Work, whether in Covered Service or in Contiguous Non-Covered Service." (Calamari Affidavit at ¶ 18 and Administrative Record at 52.)  "Covered Service" is "service for which an Employer is required to make contributions to the Pension Fund on behalf of an Employee pursuant to a Collective Bargaining Agreement . . . ." (Id.)  Pursuant to the terms of the Plan, and based upon the Social Security Administration's earnings history, Burklow earned two years of future service in 1976 and 1977.  Plaintiff presented no evidence or argument that he engaged in Contiguous Non-Covered Service.[5]

Under the terms of the Plan, in order to qualify for a "Normal Retirement Benefit," Burklow must not have "suffered a Permanent Break In Service" and have completed "ten (10) years of Service under the Plan of which at least five (5) years consist of Years of Intermediate Service, if any, and Years of Future Service, if any." (Administrative Record at 55.)[6]  However, Burklow only earned nine years of service including past, intermediate,

---

[5]"Contiguous Non-Covered Service" is "service with the same Employer in a category of employment not covered by the Collective Bargaining Agreement which either precedes or follows covered employment without an intervening quit, discharge, or retirement from employment." (Calamari Affidavit at ¶ ¶ 19,20 and Administrative Record at 52.)

[6]The parties do not address whether Plaintiff suffered a "Permanent Break In Service" under the terms of the Midwestern Pension Plan.

and future service, instead of the ten required.  Additionally, Burklow only earned three years of intermediate and future service, instead of the required five years for Normal Retirement. Similarly, Burklow did not earn the required ten years of service required to qualify for a Vested Benefit under the terms of Midwestern's Plan. (Administrative Record at 57.)  As a result, the Plaintiff did not earn a Normal Retirement Benefit or a Vested Benefit with Midwestern; and under the terms of the Plan, Burklow's pension was properly denied by the Board of Trustees.

### 2.  Claims of "Lack of Due Process" or Bias

Burklow alleges that Midwestern's failure to treat him as it has other American Dairy employees demonstrates a lack of due process or bias on the part of Midwestern.  In 1978, American Dairy was bought by Prairie Farms/Ideal Dairy.   At that time, Midwestern calculated the service credit of American Dairy's employees.  During the limited discovery permitted by the Court, Plaintiff obtained copies of some of the service records of American Dairy's employees.  From these records, Plaintiff prepared a "Summary of American Dairy Employees (28) Service Credited by Midwestern as of September 1979."   Midwestern challenges the accuracy and admissibility of the Summary.  For purposes of this motion, the Court will assume the admissibility of this Summary.

Plaintiff asserts that based upon these records, Midwestern awarded credited  service for pension purposes in the Midwestern Plan for years prior to 1971 to American Dairy employees whose initial employment at American Dairy preceded September of 1971 and continued uninterrupted thereafter as late as 1978 and 1979.  Plaintiff maintains that these

14

records also demonstrate that Midwestern awarded credited service for pension purposes in the Midwestern Plan for 1970 and 1971 when pension contributions were paid to Central States and for the years 1971 through 1974 when pension contributions were paid to Central National Life Insurance Pension Fund.  Plaintiff argues that since he worked continuously from December 3, 1968, to August 8, 1977, at American Dairy, he should be similarly entitled credit by Midwestern for "the same years of pension credited service (1968, 1969, 1970, 1971, 1972, 1973, 1974, 1975, 1976, 1977, and 1978) as have been awarded by Midwestern to the other listed employees also employed for those specific years." (Response to Motion for Judgment on the Administrative Record at 7.)  Instead, Plaintiff argues that he was charged with a break-in-service by Midwestern due solely to missing contribution records and as a result, he received zero credits.

Given Burklow's proof of employment history with American Dairy and Midwestern's current recognition of service credit for Burklow, a denial of Burklow's pension benefits based solely upon the fact that no contribution records could be located would warrant a remand to Midwestern for a review of Burklow's pension benefits claim. However, the denial was not based solely on missing contribution records.  In fact, the Administrative Record reveals that Midwestern ultimately considered all of the Plaintiff's years of employment with American Dairy from December 3, 1968 through August 8, 1977, and concluded that Plaintiff did not have the required 10 years to vest.  As discussed above, this conclusion is supported by the plan documents.

Additionally, the information submitted by Burklow regarding Midwestern's service

15

credit to former American Dairy employees does not demonstrate a "lack of due process" or "bias" on the part of Midwestern.   The Summary does not reflect that Midwestern ultimately treated Burklow differently than other employees.   Midwestern has offered undisputed testimony of Robert Calamari, Third-Party Administrator for Midwestern Teamsters Pension Fund, indicating that Midwestern granted a pension to Charles Albin, Joseph Brown, Robert Browning, Clarence Buente, Ralph Burklow, Dennis Cable, Morton Cates, Robert Hape, Walter Sanders, and Chester Wilson based upon these employees' years of service, including past, intermediate and future service.   Unlike Plaintiff's employment history with American Dairy, the above employees earned in excess of ten years of service with Midwestern. (Robert Calamari Supplemental Affidavit at ¶¶ 6-13 and 15-16.) Calamari also indicated that Donald Hunt may also be entitled to a pension, but he has not applied for one with Midwestern (Id. at ¶ 14.)

Specifically, the evidence indicate that the employees credited with more past service from Midwestern were employed by American Dairy prior to the time the Plaintiff was employed by American Dairy.   Additionally, while Plaintiff argues that he should be credited for service for the year of 1978 based upon the fact that his co-workers were credited for service for that year, a review of Plaintiff's Summary indicates that those employees credited for 1978 were actually employed by American Dairy or its purchaser, Ideal Dairy and Prairie Farms, during that year.  (Calamari Supplemental Affidavit ¶ 6, ¶ 7, ¶ 8, ¶ 16.) American Dairy, Ideal Dairy and Prairie Farms participated in the Midwestern Teamsters Pension Fund and, as a result, Midwestern credited those employees for service for 1978.

On the other hand, Plaintiff terminated his employment with American Dairy on August 8, 1977 and began his employment with Baskin-Robbins at that time.  Baskin-Robbins did not participate in the Midwestern Teamsters Pension Fund and, as a result, Plaintiff was not entitled to service credit from Midwestern for 1978.  Finally, the remainder of the twenty-eight employees referenced by Plaintiff have not applied for a pension with Midwestern.

For these reasons, the Court finds that the information received during the limited discovery permitted by this Court does not demonstrate a lack of due process or bias on the part of Midwestern during the administrative review process.

### E.  Conclusion

The record indicates that Plaintiff was employed at American Dairy from December 3, 1968 to August 8, 1977 and, as a result of contributions made by American Dairy, earned nine years of service credit.  Based on the clear terms of the Midwestern Pension Plan, Burklow did not earn a vested benefit.  While the Court is sympathetic with Burklow's situation, the Court is unable to rewrite Midwestern's Pension Plan.  The decision of Midwestern in denying pension benefits to Burklow was reasonable and was not arbitrary and capricious.  For the reasons set forth above, Midwestern's motion for judgment on the administrative record is granted.

### III.  CROSS MOTIONS FOR SUMMARY JUDGMENT ON THE REMAINING COUNTS

In addition to a recovery of benefits claim, Plaintiff asserts claims for breach of fiduciary duty against Midwestern brought under 29 U.S.C. § 1132(a)(3) of ERISA (Count

II); for breach of fiduciary duty claim brought pursuant to state law (Count III); for recovery of underpayment of pension benefits (Count IV); for penalties pursuant to 29 U.S.C. § 1132(c) (Count V); for attorney's fees and costs under 29 U.S.C. § 1132 (Count VI); and for civil penalties pursuant to 29 U.S.C. § 1132(i),(l), & (m) (Count VII).

Midwestern has moved for judgment on the pleadings, or in the alternative, for summary judgment on all claims. Burklow has moved for partial summary judgment against Midwestern as to Counts II and III of the Amended Complaint.

### A. Standard of Review

Because both parties have presented matters outside of the pleadings, the Court shall treat Midwestern's motion for judgment on the pleadings as one for summary judgment and dispose of the motion as provided in Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(c), (d); Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund, 203 F.3d 926, 931 (6th Cir. 2000).

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty

18

Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The inquiry under Fed. R. Civ. P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52 (1986).  See also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

## B. ERISA Breach of Fiduciary Duty Claim

Plaintiff alleges that Midwestern breached its fiduciary duties because it failed to secure timely contributions by American Dairy; failed to maintain and/or monitor appropriate records of pension contributions for the years he was employed; and failed to account for and appropriate to Plaintiff's benefit the pension/retirement funds paid by American Dairy.  In Plaintiff's motion for partial summary judgment and in his response to Midwestern's motion for judgment on the pleadings, Plaintiff also alleges that Midwestern breached its fiduciary duties to him because it denied him credit for past service that he was entitled to and treated him differently than other co-workers inasmuch as he was not granted past service credit for

the time period of December 3, 1968 through September, 1971.

Midwestern argues that the breach of fiduciary duty claim asserted by Burklow is barred by the applicable statute of limitations.  Pursuant to 29 U.S.C. § 1113, a claim for breach of fiduciary duty may not be brought after the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113(1), (2).   In the Sixth Circuit, "the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003).  See also Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 2008 WL 822265, *3 (6th Cir. 2008).

In the present case, the missing contributions were made by American Dairy from October 21, 1971 to October 20, 1974 to Central National and from October 21, 1974 to August 8, 1977 to Midwestern.  The Administrative Record reflects that during a meeting held at Baskin-Robbins on January 2, 2001, Plaintiff learned that his pension contribution records were missing for the years of 1971 through 1977.  Additionally, the record reflects that Central States notified Plaintiff on March 1, 2001, of the service credits he had earned

with Central States which did not include any credit for the years of 1972 through 1977.  The record further reflects that Midwestern did not conceal the lack of records, but instead represented to Burklow that it did not have the records reflecting contributions made for him during this time period.  Therefore, Plaintiff had "actual knowledge" of the missing records on January 2, 2001.  Notwithstanding, Plaintiff did not file his Amended Complaint against Midwestern until March 24, 2006.  Because Plaintiff did not file his action within three years after obtaining actual knowledge of the alleged facts upon which his claim for breach of fiduciary duty is based, his breach of fiduciary duty claim against Midwestern is time barred by 29 U.S.C. § 1113(2).

In response to the motion for judgment by Midwestern, Plaintiff argues that Midwestern fails to note all the prior actions taken by Plaintiff in this case, including the application for benefits filed April 15, 2003.  Contrary to Plaintiff's argument, § 1113(2) is not tolled while the Plaintiff exhausted his administrative remedies.  Bishop v. Lucent Technologies, Inc., 2007 WL 838945, *5 (S.D. Ohio March 15, 2007).

### C.  State Law Breach of Fiduciary Duty Claim

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  "[W]hen a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." Briscoe v. Fine, 444 F.3d 478, 498 (6th Cir. 2006) (citation omitted).  A Plaintiff may not evade ERISA's expansive preemption by "merely attach[ing] new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits,

21

for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA." Smith v. Provident Bank, 170 F.3d 609, 615 (6th Cir. 1999). See also Harvey v. Life Ins. Co. of North America, 404 F. Supp. 2d 969, 975 (E.D. Ky. 2005).

Plaintiff claims that Midwestern, along with the other Defendants, breached their fiduciary duties owed Plaintiff under the common law of Kentucky, and that as the direct and proximate result, the pension payments for Plaintiff made by American Dairy were not fully and properly recorded such that Plaintiff has been denied the full benefits due him under the three Teamsters pension plans. (Amended Complaint at ¶31, ¶32.) Essentially, Plaintiff's state-law breach of fiduciary duty claim stems from the actions of Midwestern in monitoring, collecting and keeping records of employer pension contributions and in the processing of Burklow's claim for benefits. ERISA governs a plan's obligation to monitor, collect, and keep records of employer contributions. As a result, Plaintiff's state law breach of fiduciary duty claim against Midwestern is preempted by ERISA. See Smith, 170 F.3d at 613.

### D. Underpayment of Pension Benefits

Plaintiff asserts a claim for recovery of underpayment of pension benefits. (Amended Complaint, Count IV.) This claim is an extension of Plaintiff's claim for benefits pursuant to § 1132(a)(1)(B) or for breach of fiduciary duty pursuant to § 1132(a)(3). For the reasons set forth above, this claim is dismissed as well.

### E. Penalties for Failure to Supply Information

Plaintiff requests penalties be accessed against Midwestern for failure to produce requested information pursuant to 29 U.S.C. § 1132(c). (Amended Complaint, Count V.)

Specifically, Plaintiff maintains that Midwestern failed to produce any pension fund account information regarding contributions made by American Dairy to Central National Life Insurance Pension Fund.  In his response to Midwestern's summary judgment motion, Plaintiff contends that Midwestern should also be subject to penalties because it failed to provide any of the documents produced by Teamsters Local 215 related to the pension histories of other American Dairy employees. (DN 226, Appendix at 414-491.)

ERISA gives district courts discretion to impose up to $100 a day in penalties against "'[a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested ... within 30 days after such request.'" Crosby v. Rohn & Haas Co., 480 F.3d 423, 431-432 (6th Cir. 2007)(quoting 29 U.S.C. § 1132(c)(1)(B)); see also 29 C.F.R. § 2575.502c-1.

Plaintiff is not entitled to penalties under § 1132(c) against Midwestern for the conduct alleged.  Midwestern had no obligation to record or maintain any  information related to contributions made by American Dairy to Central National.  Similarly, Burklow offers no support for his assertion that Midwestern was required to provide documents related to the pension history of other American Dairy employees under ERISA.   Furthermore, Midwestern responded to interrogatories related to the pension history of these employees and the Magistrate deemed the responses adequate.  For these reasons, Midwestern is granted summary judgment on Plaintiff's claim for penalties for failure to supply information.

23

### F.  Attorney's Fees

"In any action under this chapter ... the court in its discretion may allow reasonable attorney's fees and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The Court declines to grant Plaintiff's claim for attorney's fees against Midwestern.

### G.  Civil Penalties

Plaintiff also asks the Court to assess civil penalties against Midwestern for alleged violations of ERISA pursuant to 29 U.S.C. § 1132(i),(l)&(m).  These sections of ERISA permit the Secretary of Labor to assess these penalties, not the Court.  Plaintiff's claim for civil penalties is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.      The motion by Defendant, Midwestern Teamsters Pension Trust Fund, for judgment as a matter of law based on the Administrative Record [DN 228] is **GRANTED**.

2.      The motion by Defendant, Midwestern, for judgment on the pleadings, or in the alternative, for summary judgment [DN 238] is **GRANTED**.

3.      The motion by Defendant, Midwestern, to strike Plaintiff's jury demand [DN 229] is **MOOT**.

4.      The motion by Plaintiff, Jimmie R. Burklow, for partial summary judgment against Midwestern as to Counts II and III of the Amended Complaint [DN 235, DN 248] is **DENIED**.


cc: counsel of record