## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:02CV-32-M**

**JIMMIE R. BURKLOW**                                              **PLAINTIFF**

**VS.**

**LOCAL 215 INTERNATIONAL**
**BROTHERHOOD OF TEAMSTERS, ET AL.**                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Central States, Southeast and Southwest Areas Pension Fund, for Judgment on the Administrative Record [DN 221]; on a motion by Defendant, Central States, for judgment on the pleadings, or in the alternative, for summary judgment [DN 220]; on a motion by Defendant, Central States, to strike Plaintiff's jury demand [DN 222]; on a motion by Plaintiff, Jimmie Burklow, for partial summary judgment on issues of liability against Central States [DN 230]; and on a motion by Plaintiff, Jimmie Burklow, for partial summary judgment against Central States as to Counts II and III of the Amended Complaint [DN 232]. Fully briefed, these matters are now ripe for decision.

### I. BACKGROUND

The Plaintiff filed his original Complaint on February 8, 2002, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., relating to his pension funds. Plaintiff named as defendants his former employers, his international

and local unions, and two pension funds into which contributions were to have been made by his employers pursuant to collective bargaining agreements ("CBAs") between his employers and local unions.

By Memorandum Opinion and Order entered November 22, 2002, the Court dismissed without prejudice the Pension Fund Defendants, Central States, Southeast and Southwest Area Pension Fund and Midwestern Teamsters Pension Fund, because the Plaintiff had failed to exhaust the administrative remedies provided by the plan documents. On February 28, 2006, after exhausting all administrative remedies, the Plaintiff filed a First Amended Complaint "rejoin[ing] and reinstate[ing]" Central States and Midwestern as defendants.

In his Amended Complaint, Plaintiff alleges that he worked on an uninterrupted basis from December 3, 1968 through March 15, 2001, under Teamster Union collective bargaining agreements which required pension contributions to be made on his behalf and, as a result, he is entitled to "full pension benefits due him." (Amended Complaint at ¶¶ 11-16.) In particular, Plaintiff contends that, although all required contributions were timely paid for him as required by the collective bargaining agreements, "no records exist for any such payments made by American Dairy for [him] from late 1971 until mid 1977." (Id. at ¶ 20.) Burklow claims that Central States, Central National, and Midwestern should have received contributions on his behalf. (Id. at ¶ 21.) However, Plaintiff recognizes that one of the Funds, Central National Life Insurance Pension Fund, has not been located and is not a party to this lawsuit. (Id. at 19 n. 5.)

Based upon these factual allegations, the Plaintiff asserts an ERISA benefits claim

pursuant to the civil enforcement provisions in § 1132(a)(1)(B) of ERISA against the Pension Funds, Central States and Midwestern, alleging that these Pension Funds have wrongfully denied him the full pension benefits which he has earned.  Additionally, Plaintiff asserts claims against all the Defendants alleging that he has not been provided with documentation verifying that contributions were made for the years 1972-77; that the Defendants breached their fiduciary duties under ERISA and state law by failing to secure the employer contributions and/or to monitor or maintain records regarding those contributions; and that the missing contributions have caused his pension accounts to be underfunded.  Plaintiff also alleges that the Defendants violated the civil enforcement provisions in ERISA, 29 U.S.C. § 1132(c), by not supplying him with requested information.  He also seeks penalties and attorney's fees against the Defendants.

The parties have now filed numerous dispositive motions in this matter.  The Court will address all motions relating to Central States in this Memorandum Opinion and Order.

## II.  CENTRAL STATES' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Burklow argues that he is entitled to full pension benefits for his employment in a Teamster industry from December 8, 1968 though March 15, 2001, and that Central States improperly calculated his pension benefits.  Pursuant to the guidelines for the disposition of ERISA cases stated in Wilkins v. Baptist Healthcare Systems, Inc., 150 F.3d 609 (6th Cir. 1998), Defendant, Central States, requests that judgment be entered on the administrative record in favor of Central States on all Burklow's claims for recovery of benefits brought

pursuant to 29 U.S.C. § 1132(a)(1)(B).  In response, Plaintiff, Jimmie Burklow, filed a motion for partial summary judgment on issues of liability against Central States [DN 230]. The Court construes this motion as one for judgment on the administrative record.

### A.  Burklow's Work History and Pension Contributions

From December 3, 1968 to August 8, 1977, Burklow was employed by American Dairy and was a member of Teamsters Local 215.  American Dairy was a signatory to collective bargaining agreements with Teamsters Local 215.  The terms of the collective bargaining agreements between Local 215 and American Dairy required American Dairy to contribute money to Central States Pension Fund for its employees from May 1, 1970 to October 20, 1971; to Central National Life Insurance Pension Fund from October 21, 1971 to October 20, 1974; and to Midwestern Teamsters Pension Trust Fund from October 21, 1974 to October 20, 1977.  Burklow was employed by Baskin-Robbins from August 8, 1977 through March 15, 2001, and was a member of Teamsters Local 783.  Pursuant to the terms of the collective bargaining agreement between Local 783 and Baskin-Robbins, Baskin-Robbins contributed money to Central States Pension Fund from August 8, 1977 to March 15, 2001, the date the Baskin-Robbins plant closed.

Central States has a record of all contributions made by American Dairy and Baskin-Robbins on behalf of Burklow from May 1, 1970 to October 20, 1971 and August 8, 1977 to March 15, 2001, respectively.  Central National Life Insurance Pension Fund has not been located and no records have been obtained reflecting contributions made on behalf of Burklow.  Midwestern likewise has no records of contributions made by American Dairy on

4

behalf of Burklow.   However, during the course of these proceedings, Midwestern now recognizes that American Dairy made all the required contributions for Burklow to Central National Life Insurance Pension Fund and Midwestern Teamsters Pension Trust Fund from October 21, 1971 to August 8, 1977, and has awarded Burklow nine years of service credit. (See, e.g., Defendant Midwestern's Response to Plaintiff's Motion for Partial Summary Judgment as to Counts II and III at 10-12.)

## B.  Administrative History

On June 2, 2003, Plaintiff filed his Application for Retirement Pension Benefit. (Administrative Record, DN 146, Albert Nelson Affidavit, Exhibit C, 167-174.)  By letter dated July 25, 2003, Central States advised Burklow that it had all the documentation needed to recommend approval of his application for the 20 Year, Class 16 Contributory Pension. Central States informed Burklow that the retirement date of March 15, 2001, listed on his application was not acceptable because of late filing rules.  Central States told Burklow that under the terms of the Plan, the Pension Fund must be advised of an employee's retirement date within twelve months of its occurrence and there is a twelve month limit on payment of retroactive pension benefits.  According to Central States, "the earliest retirement date you can use would be May 30, 2002." (Id. at 133.)  Additionally, Central States also informed Burklow that since his application for benefits showed that he worked after May 31, 2002, at Alcoa Automotive, Kimbal Manufacturing, and Midland Foods, he was not eligible to receive benefits from the Pension Fund while performing any of this disqualifying reemployment.  (Id.)

5

On January 9, 2004, Burklow filed an administrative appeal with Central States arguing that (1) the retirement date should be changed to March 15, 2001, and (2) he had not engaged in prohibited reemployment. First, Burklow argued that the late-filing rule should not apply because Central States knew he would retire after the Baskin-Robbins plant in Owensboro closed and he acted as quickly as possible to file his retirement application. (Id. at 125.) Second, Burklow argues that his reemployment after March 15, 2001, was not prohibited under the Plan rules because he was not working in union jobs and not working in the ice cream/dairy industry. (Id. at 125-126.)

The Central States Benefits Claims Appeals Committee considered Burklow's appeal and denied his claims. By letter dated March 11, 2004, Central States advised Burklow that the Committee had found the he could not receive pension benefits while he was working, after retirement, in Teamster Industry Reemployment or in a Core Teamster Industry. (Id. at 118-119.) Central States told Burklow that he must terminate his employment before his retirement benefit can begin. Further, Central States also communicated to Burklow that, even if he was not working in prohibited employment, his retirement date of April 1, 2001 was not valid because of the late filing rules. "[T]he Fund's late filing policy only allows a participant to receive 12 months of retroactive benefits if he or she qualifies." (Id. at 119.)

On September 3, 2004, Burklow submitted a Pension Benefit Appeal Form. He again argued that his work after March 15, 2001, should not be classified as prohibited reemployment, and the he should be eligible for full pension benefits. In support of his appeal, Burklow submitted a copy of his social security earnings. (Id. at 99-112.) On

6

January 14, 2005, Burklow supplemented his appeal with additional affidavits and also stated

"please be advised that Mr. Burklow respectively asserts a third issue in this appeal, i.e. that

of his pension account being underfunded and his receipt of less credit than he should have

had, if proper contributions had been made on his behalf." (Id. at 69.)  On January 21, 2005,

Burklow further supplemented the record with additional affidavits and filed a Verified

Statement of Appeal.  (Id. at 32-66.)

On January 27, 2005, the Benefits Claim Appeals Committee again considered and

denied Burklow's appeal.  By letter dated February 11, 2005, Central States determined that

Burklow was not eligible to receive a benefit greater than one based on his 23 years of

Contributory Service Credit providing in relevant part:

> According to Fund records, Mr. Burklow first joined Central States Pension
> Fund on the same date that American Dairy first joined the Pension Fund –
> May 1, 1970.  Therefore, he is not eligible for Contributory Service Credit for
> his employment with American Dairy for periods before May 1, 1970.  Mr.
> Burklow earned 2 years of Contributory Service Credit for the period of 1970
> through 1971.  His bargaining unit withdrew from Central States in October
> 1971, and American Dairy ceased to be a Contributing Employer to Central
> States at that time.  Based on the information you provided, from October 1971
> through October 1974, Mr. Burklow's bargaining unit participated in Central
> Life Insurance Pension Fund, and from October 1974 through August 1977
> (when Mr. Burklow terminated his employment with American Dairy), his
> bargaining unit participated in Midwestern Teamsters Pension Trust Fund.
> Neither of these funds are signatory to a reciprocal agreement with Central
> States Pension Fund; and therefore, when Central States determines Mr.
> Burklow's eligibility for benefits, any credit he earned with these other funds
> is not included.  Mr. Burklow was not working in Covered Service from
> November 1971 through August 1977.  He incurred 5 consecutive One-Year
> Breaks in Service (1972-1976); and therefore, he sustained a Break in Service,
> which caused the loss of his Contributory Service Credit for the period of 1970
> through 1971.  Based on contributions made on his behalf by Baskin Robbins
> from September 1977 through March 2001, he established 23 years of

7

> Contributory Service Credit and Benefit Class 16.   Mr. Burklow also
> recovered his lost Service Credit for the period of 1970 through 1971;
> however, this Service Credit was recovered as <u>Non</u>-Contributory Service
> Credit (even though it was originally Contributory Service Credit).   Please
> note that, because Mr. Burklow established at least 20 years of Contributory
> Service Credit, his 2 years of Non-Contributory Service Credit do not increase
> his benefit amount.

(<u>Id.</u> at 25-26.)

The Central States Board of Trustees considered and denied Burklow's appeal on

August 16, 2005.   By letter dated August 25, 2005, Central States informed Burklow that

the Board of Trustees reviewed his appeal and "determined that (1) he sustained a Break in

Service subsequent to October 1971, (2) his reemployment from April 2001 through present

disqualified and continues to disqualify him from receiving pension benefits," and (3)

because of the late filing rules, Burklow "was not eligible to receive pension benefits for

periods before July 2002."  (Administrative Record, Nelson Affidavit, Exhibit D, at 1-4.)

The Trustees also communicated to Plaintiff that because his appeal had been presented to

and denied by the Trustees, he has completed all steps available under the Pension Plan

appellate process.  (<u>Id.</u> at 4.)

Following Central States' final denial of his claim for pension benefits, Burklow filed

his Amended Complaint asserting his benefit claim pursuant to § 1132(a)(1)(B).

## C.  Standard of Review

A plan administrator's denial of benefits under an ERISA plan "is to be reviewed

under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the

8

plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). See also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 613 (6th Cir. 1998). On the other hand, if the plan vests discretionary authority in the plan administrator, the decision will be reviewed under an arbitrary and capricious standard of review. See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

The language in the Trust Agreement provides in relevant part: "The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Pension Fund and other claimants, and including Trustee decisions construing plan documents of the Pension Fund." (Administrative Record, Nelson Affidavit, Exhibit A at 17.) The language of the Trust Agreement clearly grants discretionary authority to Central States to interpret the terms of the Trust Agreement and to determine eligibility for benefits. Thus, where the administrator of the plan has discretionary authority in evaluating eligibility for benefits, as in the present case, the Court reviews the denial of benefits under an arbitrary and capricious standard. Wilkins, 150 F.3d at 613.

Generally, a court's review of a decision to deny benefits under a qualified employee benefit plan is limited to the administrative record. Bennett v. Unum Life Insurance Company of America, 321 F. Supp. 2d 925, 928 (E.D. Tenn. 2004); Myers v. Bridgestone/Firestone Long-Term Disability Benefits Plan, 2004 WL 1501631 (E.D. Tenn. June 17, 2004)(citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989)). "The only exception to the above principle of not receiving new evidence at the district court level

9

arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." Wilkins, 150 F.3d at 618.

Plaintiff argues that because the Court permitted limited discovery[1] regarding Plaintiff's allegations of a denial of due process by Central States, the Court should depart from the arbitrary and capricious standard of review applicable in ERISA cases and should instead utilize a summary judgment standard of review. Contrary to Plaintiff's argument, the Sixth Circuit has rejected the use of the summary judgment standard of review in ERISA benefit actions. Wilkins, 150 F.3d at 619.

The Court will consider the matters outside the administrative record in determining Plaintiff's procedural challenge to the administrator's decision. However, consideration of these matters does not alter the arbitrary and capricious standard of review. See Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998)(administrator's conflict of interest does not alter the standard of review).

### D.  Discussion

Having established the appropriate standard of review, the Court must now determine whether to uphold Central State's decision to deny Plaintiff's claim for additional pension

---

[1]The Court granted Plaintiff limited discovery from both Central States and Midwestern regarding their knowledge of (1) the past or present existence of Central National Life Insurance, its successors, and/or any of its trust funds it was to maintain for Plaintiff's retirement; (2) any contributions made on behalf of Plaintiff between October 21, 1971 and October 20, 1977; and (3) the existence of any reciprocal agreements between Central States, Central National, and Midwestern.

benefits.  "The arbitrary and capricious standard is the least demanding form of judicial review."  Hunter v. Caliber Systems, Inc., 220 F.3d 702, 709-10 (6th Cir. 2000).  A determination by the administrator to deny benefits which is based upon a reasoned explanation for the outcome and rational in light of the plan provisions must be upheld. Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000).  Accordingly, where it is "possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  Id.

Burklow argues that Central States' denial of "full" pension benefits was arbitrary and capricious because Central States (1) improperly penalized him for restricted employment; (2) improperly calculated his appropriate retirement date; (3) improperly charged him with a loss of two years of contributory credit under the Break-in-Service rules; and (4) improperly reduced the full pension benefits due him.  Burklow contends that these errors occurred because Central States failed to consider and invoke the Special Eligibility Provisions of Appendix H to the Plan and failed to consider the misrepresentations of its representative, Michael Mullane, introduced through the affidavits of Charles Ijames, Sr., and George Pappas.  These arguments shall be addressed in turn.

### 1.  Post-Retirement Reemployment

The Central States Board of Trustees concluded that Burklow's employment with Tyson Chicken, Alcoa Automotive, Kimbal Manufacturing, and Midland Foods Company after his requested retirement date of March of 2001 constituted Prohibited Reemployment and/or Teamster Industry Reemployment.  Article IV, § 4.13(a) of the Pension Plan, in effect

on March 15, 2001, provides in relevant part that "[a] Pensioner shall have his benefit payments suspended for any calendar month in which he works in 'Prohibited Reemployment.'" (Administrative Record, DN 146, Nelson Affidavit, Exhibit B at 58.) Prohibited Reemployment is defined in part as:

> [e]mployment in any position . . . either in the same industry in which the Participant or Pensioner earned any Contributory Service Credit while covered by the Pension Fund, or in any other industry if the Participant or Pensioner is in the same job classification as are other Participants then employed by a Contributing Employer located within the same standard metropolitan statistical area.

(§ 4.13(f)(3), Id. at 59.)  On January 1, 2004, these reemployment rules were amended providing in relevant part that "all Periodic Benefit Payments to a Pensioner shall be permanently suspended during all periods of his Restricted Reemployment. . . ."  (§ 4.13(a)(2), DN 146, Nelson Affidavit, Exhibit D at 14.)  Under these new rules, "Restricted Reemployment" is defined to also include "[r]eemployment in a Core Teamster Industry." (§ 4.13(g)(3)(A), Id. at 18.)  "Core Teamster Industry" means reemployment in any of the following industries: "(A) trucking and/or freight; (B) small package and/or parcel delivery; (C) car haul; (D) tank haul; (E) warehouse; (F) food processing and/or distribution (including grocery, dairy, bakery, brewery, and soft drink); and (G) building material and/or construction."  (§ 4.13(g)(4).)

Burklow does not dispute Central States' finding that his employment with Tyson, Alcoa, Kimbal and Midland constitutes prohibited reemployment under the terms of Plan in effect at the time he retired.  Similarly, Burklow has not challenged that his reemployment

with Midland Foods Company is restricted reemployment under the current terms of the Pension Plan because he is currently reemployed in a Core Teamster Industry (food processing and/or distribution).

Instead, in arguing that Central States' decision was arbitrary and capricious with respect to this issue, Plaintiff states that "[b]ecause no consideration was given to Mike Mullane's statements made January 2, 2001," he was penalized "[f]or continuing to work (he had to earn a living) in a 'restricted employment.'"  (Plaintiff's Response to Central States Pension Funds Motion for Judgment on the Pleadings at 10-11.)  Contrary to Plaintiff's argument, the substance of Mullane's meeting with Plaintiff on January 2, 2001, was a part of the record of Plaintiff's administrative appeal. (Charles Ijames Affidavit, Administrative Record, DN 146, Nelson Affidavit, Exhibit C at 12.)  Furthermore, the impact of Mullane's statements on Plaintiff's benefits claim is addressed in more detail below.  (See Section D, Part 4.)  In as much as Plaintiff is arguing that the failure of Central States to award him full pension benefits caused him to have to work in restricted employment, Plaintiff fails to cite any exception to the reemployment rules under the Plan that would permit Plaintiff's employment at Tyson, Alcoa, Kimbal, or Midland.

For these reasons and from a review of the record, the Court finds that Central States' decision with respect to Plaintiff's ineligibility for benefits due to his continued employment is not arbitrary and capricious.

## 2.  Retirement Date

Burklow appears to challenge Central States' decision that he was not eligible to

receive pension benefits for periods before July 2002.  Article 7, §7.14 of the Pension Plan

outlines the benefit claim filing procedures and provides in relevant part:

> (b)     A Participant . . . shall be required to file a written claim for benefits
> with this Pension Fund within the 12 month period following the event
> (retirement, disability or death) for which benefits are being claimed.
> In addition, a Participant shall also be required to notify the Pension
> Fund, in writing, and within the 12 month period following the date
> from which he intends his benefit payments to begin, that he wishes to
> begin receiving his benefit UNLESS he has already filed a written
> claim specifying that date.

> (c)     If a Participant . . . fails to comply with the requirements in (b), above,
> he shall, in addition to future benefits, receive benefits only for the 12
> calendar months preceding the month which follows the month in
> which he meets the last applicable requirement in (b), above.

(§ 7.14 (b), (c), Administrative Record, DN 146, Nelson Affidavit, Exhibit B at 71.)  The

Administrative Record further reflects that by letter dated May 7, 2001, to Plaintiff's counsel,

Central States reminded Burklow that "[h]e should file an application at least six months

before his intended retirement date."  (Id., Exhibit C at 193.)

Burklow provided written notification of his March 15, 2001, retirement on his

pension application signed on June 2, 2003.  Pursuant to § 7.14(c) of the Pension Plan,

Burklow is not eligible for pension benefits for the period of April 2001 through June 2002

because he did not file a written claim for benefits within the 12 month period following

March 15, 2001, and he did not notify the Pension Fund in writing of the date on which he

wanted his benefits to begin within the 12 month period following March 15, 2001.  Central

States appropriately concluded that Burklow was not entitled to pension benefits until July

of 2002 because he failed to comply with § 7.14(c) of the Pension Plan.  Accordingly, the

14

Court concludes that Central States' decision with respect to Burklow's retirement date was not arbitrary and capricious.

### 3.  Break-in-Service

Burklow challenges Central States' decision that he lost two years of contributory credit pursuant to the break-in-service rules under the Central States Pension Plan. Specifically, Central States found that Burklow is not entitled to Contributory Credit with it for his employment prior to 1977.  Under the terms of the Central States Pension Plan, a participant earns contributory service credit when he has contributory service. (§ 1.10, Administrative Record, Nelson Affidavit, Exhibit B at 9.)  A participant earns contributory service for employment with a contributing employer who is "required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement." (§ 1.09, Id. at 7.)  According to Central States, Burklow could not have earned contributory credit with Central States before American Dairy joined Central States in 1970.

Central States recognizes that American Dairy paid contributions to Central States for Burklow for 1970 and 1971.  However, when American Dairy withdrew from Central States in October of 1971, Central States maintains that Burklow incurred a break-in-service over the next five years pursuant to the terms of the Pension Plan.  The Pension Plan provides that a participant who incurs three consecutive one-year breaks-in-service before 1975 loses the contributory credit he earned prior to the breaks-in-service. (§ 1.05(a)(2)(c), § 1.05(c), Id. at 3.)  Central States asserts that this break-in-service caused Burklow to lose the two years of contributory credit he had earned for the years of 1970 and 1971.  Because contributions

15

were again made on his behalf by Baskin-Robbins in 1977, Burklow was able to recover the two lost years of service, but only as non-contributory service. (§ 1.28, Id. at 20.)  Non-contributory service does not increase Burklow's pension.

Plaintiff does not appear to challenge Central States' calculation of his years of contributory service based upon the terms of the original Pension Plan.  Instead, Burklow now argues that Central States improperly charged him with a break-in-service and that he is entitled to contributory credit for the years of 1970 and 1971 under the terms of The Special Eligibility Appendix, Appendix H.  Appendix H, The Special Eligibility Appendix, provides in relevant part:

> (d) Service in a different fund which has reciprocity with the Pension Fund, or in another pension plan established by collective bargaining with an International Brotherhood of Teamsters affiliate which this Pension Fund does not have a reciprocal agreement, will not constitute a Break-in-Service regardless whether it is treated as Service Credit in this Pension Fund for purposes of the Pension Plan for employment covered by another pension plan.

(Appendix H, DN 146, Exhibit B, at H-2.)  According to Burklow, given that he has pension funds held for him in other pension plans, he would have suffered no break-in-service penalty resulting in more complete benefits awarded him pursuant to Appendix H, § (d).  Burklow complains that Central States in reviewing his administrative appeal never considered the applicability of Appendix H, and as a result, Central States' decision to deny him a higher retirement benefit is arbitrary and capricious.

In response, Central States notes that while Appendix H is part of the administrative record, Burklow did not raise the applicability of Appendix H to support his administrative

appeal.  Central States also contends that Appendix H does not apply to Burklow to protect him from a break-in-service.  Specifically, Central States claims that Burklow has not set forth any evidence that Central National was a pension plan established by a Teamster affiliate of the International Brotherhood of Teamsters or that  Burklow earned any credit under Central National.  Central States argues that Central National was an insurance company, and not an employee benefit plan.  In support of this argument, Central States cites the deposition of Charles McDonald, a retired officer of Teamsters Local 215.  During his deposition, Plaintiff's counsel pointed out to McDonald that the collective bargaining agreement, effective October 21, 1971, provided that American Dairy would submit contributions to the Central National Life Insurance Pension Fund.  Burklow's attorney then asked, "Is that a Teamsters pension fund?"  McDonald answered, "Not to my knowledge." (Charles McDonald Deposition at 22.) Since ERISA was not effective until January 1, 1975, Central States contends that it is logical that American Dairy and the Union, pre-ERISA, did not even consider whether Central National was an insurance company or a pension benefit plan established by the Teamsters.

Additionally, Central States argues that Burklow likewise earned no credit with Midwestern.  Recognizing that Midwestern is a pension plan established by a collective bargaining agreement with Teamsters Local 215, Central States contends that even if Burklow had earned credit with Midwestern, he would have only earned credit for the years of 1975 through 1977 and would still have a break in service for the years of 1972, 1973, and 1974.

After a careful examination of the administrative record and for the reasons set forth below, the Court concludes that Central States' decision to deny Burklow's claim for a retirement benefit based upon 25 years of contributory service  was arbitrary and capricious because the Trustees failed to consider the application of Appendix H.  A review of the Administrative Record reveals that while Appendix H was a part of the Administrative Record, at no point in the Minutes of the Trustees' Meetings or in the correspondence with Burklow did Central States address Burklow's claim in light of Appendix H.  Therefore, the Court is unable to conclude that the Trustees' determination to deny a 25 year pension to Burklow is rational in light of the plan provisions.

Contrary to Central States' argument, Burklow appears to have a valid argument with respect to the application of Appendix H.   It is undisputed that Plaintiff was employed full-time by American Dairy from December 3, 1968 to August 8, 1977.  It is also undisputed that Plaintiff was a member of Teamsters Local 215 during this time period and that Teamsters Local 215 negotiated collective bargaining agreements with American Dairy.  Under the terms of these collective bargaining agreements negotiated by Local 215, an International Brotherhood of Teamsters affiliate, American Dairy was required to contribute money to Central National Life Insurance Pension Fund from October 21, 1971 to October 20, 1974 and to Midwestern Teamsters Pension Trust Fund from October 21, 1974 to October 20, 1977.   Admittedly, no contribution records have been located for Burklow for his employment between October 21, 1971 to October 20, 1977.  However, Midwestern now concedes that American Dairy made all the required contributions for Burklow to Central

National Life Insurance Pension Fund and Midwestern Teamsters Pension Trust Fund from October 21, 1971 to August 8, 1977.  (See, e.g., Defendant Midwestern's Response to Plaintiff's Motion for Partial Summary Judgment as to Counts II and III at 10-12.) Midwestern has now credited Burklow nine years of pension credits for the years of 1968-1977.[2]  Midwestern has also acknowledged that other American Dairy employees who met the requirements under Midwestern's Pension Plan were given credit for pension contributions made both to Central National and Midwestern during this time period. (Robert Calamari Supplemental Affidavit at ¶¶ 6-16.)  Furthermore, by letter dated November 27, 1978, Teamsters Local 215 Staff Counsel Anne Cavanaugh Thomas informed Central States that " [w]hen the second collective bargaining agreement was negotiated in 1971, the **pension coverage** was changed to Central National Life." (DN 226, Appendix at 435 (emphasis added).)  Clearly, in 1978, Teamsters Local 215 represented to Central States that it negotiated a collective bargaining agreement with Central National for pension coverage.  Given this information, it appears to the Court that both Central National and Midwestern were pension plans established by collective bargaining agreements with Teamsters Local 215.  Therefore, Burklow has a valid argument that Central States improperly charged him with a break-in-service and he is entitled to contributory credit for the years of 1970 and 1971 in light of the terms of The Special Eligibility Appendix, Appendix H.

---

[2]Based upon the terms of the Midwestern Plan, Burklow did not earn a vested benefit because he did not attain 10 years of service credits with Midwestern.

19

The Court recognizes that some of this information was produced by Teamsters Local 215 during the limited discovery permitted in this case and, therefore, was not presented to the Trustees during Burklow's appeal.  Given that the Trustees did not consider Appendix H in determining Burklow's eligibility for benefits and this new information produced by Teamsters Local 215, the Court finds that Burklow's claim for pension benefits should be reopened.  After an appropriate time for submission of all information related to the applicability of Appendix H, Central States should then make a determination of whether or not Burklow is entitled to any additional pension benefits based upon Appendix H or any other provision contained in the Plan documents.  In the event the Board of Trustees denies Burklow's claim for a 25 Year Retirement Benefit, Burklow may move to reopen this case for review of the administrative decision.

### 4.  Full Pension Benefits

Burklow alleges that because of the failure of Central States to consider Appendix H and the statements of Michael Mullane, he was not awarded his full pension benefits due him.  From a review of the current pleadings, the Court is unable to ascertain whether Plaintiff is claiming he is due a 25 Year, Class 16 Retirement Benefit or a 30 Year, Class 16 Retirement Benefit from Central States.  Plaintiff cites no plan provisions, including those contained in Appendix H, that appear to require Central States to award contributory credit for the years in which American Dairy contributed to another pension fund.  In fact, it is undisputed that Central States had no reciprocal agreements with either Midwestern or Central National.  Because no contributions were paid by American Dairy to Central States

for Burklow for the years of 1972 through 1976, Burklow earned no contributory credit with Central States for these years.  Therefore, Plaintiff's claim for a 30 year retirement benefit is not supported by the Plan documents.

Furthermore, in as much as Burklow is asserting an estoppel claim, Mullane's oral representations are not sufficient to alter the terms of the Pension Plan. "[O]ral representations that conflict with the terms of a written plan will not be given effect, as the written instrument must control." <u>Schmidt v. Sheet Metal Workers' Nat. Pension Fund</u>, 128 F.3d 541 (7th Cir. 1997); <u>Sprague v. General Motors Corporation</u>, 133 F.3d 388, 404 (6th Cir. 1998)(A "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of the plan documents available to or furnished to the party."). The oral representations creating the basis for Burklow's claim conflict with the calculation of the retirement benefits under the terms of the Pension Plan. Thus, Burklow's estoppel claim fails.

### E.  Conclusion

The decision of Central States to deny Plaintiff's claim for a 25 year retirement benefit was arbitrary and capricious because the Trustees failed to consider the application of Appendix H.   Central States' denial of Plaintiff's claim for a 25 year retirement benefit is reversed and this matter is remanded to the Plan Administrator for a determination of the Plaintiff's claim.

### III.  CROSS MOTIONS FOR SUMMARY JUDGMENT
### ON THE REMAINING COUNTS

In addition to a recovery of benefits claim, Plaintiff asserts claims for breach of fiduciary duty against Central States brought under 29 U.S.C. § 1132(a)(3) of ERISA (Count II); for breach of fiduciary duty claim brought pursuant to state law (Count III); for recovery of underpayment of pension benefits (Count IV); for penalties pursuant to 29 U.S.C. § 1132(c) (Count V); for attorney's fees and costs under 29 U.S.C. § 1132 (Count VI); and for civil penalties pursuant to 29 U.S.C. § 1132(i),(l), & (m) (Count VII).

Central States has moved for judgment on the pleadings, or in the alternative, for summary judgment on all claim [DN 220].  Burklow has moved for partial summary judgment against Central States as to Counts II and III of the Amended Complaint [DN 232].  In their cross-motions for judgment on the administrative record [DN 221, DN 230], the parties also address some of these remaining claims and the Court will consider those arguments in this section.

### A.  Standard of Review

Because both parties have presented matters outside of the pleadings, the Court shall treat Central States' motion for judgment on the pleadings as one for summary judgment and dispose of the motion as provided in Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(c), (d); Shelby County Health Care Corp. v.  Southern Council of Industrial Workers Health and Welfare Trust Fund, 203 F.3d 926, 931 (6th Cir. 2000).

In order to grant a motion for summary judgment, the Court must find that the

pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex  Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The inquiry under Fed. R. Civ. P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52 (1986).  See also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.

### B.  ERISA Breach of Fiduciary Duty Claim

Plaintiff alleges that Central States breached its fiduciary duties because it failed to

secure timely contributions by American Dairy; failed to maintain and/or monitor appropriate records of pension contributions for the years he was employed; and failed to account for and appropriate to Plaintiff's benefit the pension/retirement funds paid by American Dairy. (Amended Complaint at ¶ 28).  In Plaintiff's motion for partial summary judgment and in his response to Central States' motion for judgment on the pleadings, Plaintiff also alleges that Central States breached its fiduciary duties to him because of misrepresentations made by Michael Mullane, Field Service Representative for Central States, on January 2, 2001.

### 1.  Statute of Limitations

Central States argues that the breach of fiduciary duty claim asserted by Burklow is barred by the applicable statute of limitations.  Pursuant to 29 U.S.C. § 1113, a claim for breach of fiduciary duty may not be brought after the earlier of

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113(1), (2).  In the Sixth Circuit, "the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003).  See also

Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 2008 WL 822265, *3 (6th Cir. 2008).

In the present case, the missing contributions were made by American Dairy from October 21, 1971 to October 20, 1974 to Central National and from October 21, 1974 to August 8, 1977 to Midwestern.  The meeting between Michael Mullane and Plaintiff occurred on January 2, 2001, at which time Plaintiff learned that his pension contribution records were missing for the years of 1972 through 1977.  Additionally, Central States notified Plaintiff on March 1, 2001, of the service credits he had earned with that pension fund which did not include any credit for the years of 1972 through 1977.  Therefore, Plaintiff had "actual knowledge" of the missing records on January 2, 2001.  Notwithstanding, Plaintiff did not file his Amended Complaint against Central States until March 24, 2006.  Because Plaintiff did not file his action within three years after obtaining actual knowledge of the alleged facts upon which his claim for breach of fiduciary duty is based, his breach of fiduciary duty claim against Central States is time barred by 29 U.S.C. § 1113(2).

Notwithstanding, the Court will address the merits of Plaintiff's claim for breach of fiduciary duty against Central States.

### 2.  Allegations in Amended Complaint

Even if Plaintiff's breach of fiduciary duty claim was not time-barred, the record does not support Plaintiff's claim for breach of fiduciary duty against Central States.  Contributions were made by American Dairy to Central States for Burklow from May 1, 1970 to October 20, 1971.  Central States has a record of these contributions.  From October

21, 1971 through August 8, 1977, the collective bargaining agreements mandated that contributions were to be made for Burklow either to Central National or to Midwestern. Central States did not have the authority to receive or direct payment of American Dairy contributions after October of 1971 or before August 8, 1977, and a result, cannot be liable to Burklow for failure to record, collect, or keep records related to this time period. Central States owed no fiduciary duty to Burklow for this period of time, and as a result, the Court finds summary judgment on these claims warranted.

### 3. Alleged Misrepresentation of Michael Mullane

In late 2000, the employees at the Baskin-Robbins plant in Owensboro learned that the plant would be closing. On January 2, 2001, Michael Mullane, Field Service Representative for Central States, conducted a meeting at the Baskin-Robbins plant to discuss with each individual Baskin-Robbins employee his or her retirement options. Mullane met individually with each employee. During his conversation with Burklow, Mullane noted that there was a period of time from late 1971 to 1977 where there was no record of contributions made on Burklow's behalf. "Mr. Mullane explained to him that he should call Robert Calamari in Chicago and explain to him that in fact he had worked for American Dairy continuously from 1971 through 1977 and that with this proof of work service, Mr. Burklow would be credited with contribution credit for those years where no credit was shown on his pension contribution status report at that time." (Charles Ijames Affidavt at ¶ 6; George Pappas Affidavit at ¶ 6.) Burklow claims that based upon the representations made to him by Michael Mullane on January 2, 2001, he gave notice of his retirement. Because of the

fiduciary breach by Central States Burklow claims that he lost the two years of Contributory Credit with Central States he had earned for 1970 and 1971 and he did not receive Contributory Credit with Central States for 1972 to 1977 when American Dairy made contributions to Central National and Midwestern. [3]

Section 1132(a)(3) of ERISA permits an individual participant or beneficiary to maintain a private right of action for breach of fiduciary duty for "appropriate equitable relief." Allinder v. Inter-City Products Corp., 152 F.3d 544, 551 (6th Cir.1998). See also Varity Corp. v. Howe, 516 U.S. 489 (1996). The Sixth Circuit has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary. See Krohn v. Huron Memorial Hospital, 173 F.3d 542, 546 (6th Cir. 1999).

"A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 432 (6th Cir. 2006)(quoting Krohn, 173 F.3d at 547)). "'Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'" Id. (quoting Drennan v. Gen. Motors Corp., 977 F.2d 246, 251 (6th Cir.1992)). See also Sprague, 133

_____

[3]For purposes of this motion for summary judgment, the Court finds that Mullane made the statements to Burklow. While Defendant appears to imply that Mullane did not make these exact statements to Plaintiff, Defendant has failed to put forth any evidence to support its position.

F.3d at 405.[4] To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show:

> (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations;
>
> (2) that these [representations] constituted material misrepresentations; and
>
> (3) that the plaintiff relied on those misrepresentations to [his] detriment.

Moore, 458 F.3d at 433 (citing James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir.2002)).  "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." Id.  Further, "a plaintiff's reliance on the misrepresentation must be 'reasonable.'" Id. (citations omitted).

Without deciding whether Burklow has established the first two elements, a  review of the record clearly reveals that Burklow cannot satisfy the third element.   Burklow disagrees arguing that he satisfies the third element because he relied upon Mullane's misrepresentation and made the decision to retire from his employment with Baskin-Robbins.

_____

[4] However, a negligent misrepresentation made by a ministerial employee will not support a breach of fiduciary duty claim when the plan itself provides complete and correct information.  Schmidt v. Sheet Metal Workers' Nat'l Pension Fund, 128 F.3d 541, 547 (7th Cir. 1997).  The evidence presented does not reflect if Mullane was an ERISA fiduciary or a ministerial employee.  To be a fiduciary, "the individual or entity involved must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself."  Id. at 547.  For purposes of this motion for summary judgment, the Court will assume Mullane was an ERISA fiduciary.  See also Easa v. Florists' Transworld Delivery Ass'n, 5 F. Supp.2d 522 (E.D. Mich. 1998).

In fact, Plaintiff claims that "[h]ad Michael Mullane told Jimmie January 2, 2001, he was ineligible for full benefits, Jimmie would have certainly taken different immediate actions to secure his pension." (Plaintiff's Motion for Partial Summary Judgment on Issues of Liability, DN 232, at 10-11.)

The record reflects that Burklow started calling Central States representatives and others regarding his retirement eligibility on January 25, 2001, immediately after Mullane's alleged representations to him. On March 1, 2001, prior to the Baskin-Robbins plant closing, Central States sent Burklow a letter informing him that he had twenty-three years of Contributory Credit with Central States. It informed him that he had a break-in-service for five consecutive years (1972-1975), because no contributions were made on his behalf and stated "a Break in Service causes the loss of all credit earned before the Break." (DN 146, Nelson Affidavit, Ex. C., at 234.) On April 16, 2001, Central State sent a letter to Burklow confirming the same information. The Baskin- Robbins plant closed on March 15, 2001. Ultimately, the administrative record shows that Central States communicated to Burklow, both immediately before and immediately after Baskin-Robbins closed, that he did not earn any credit for the years of 1972-1977. Additionally, throughout his application for pension benefits and appeal with Central States, Plaintiff did not claim that he retired because of any statements by Mullane.

Given the history of the communication with Central States, the record does not support Burklow's alleged detrimental reliance on the information provided by Mullane. Prior to the plant closing and Burklow's retirement, Burklow had the correct information.

29

In light of the written correspondence of Central States and the clear language of the Central States Pension Plan, any continued reliance by Burklow on Mullane's statements was unreasonable.  Thus, the Court finds that no genuine issues of material fact exist and summary judgment on the Burklow's  breach of fiduciary duty claims is appropriate.

## C.  State Law Breach of Fiduciary Duty Claim

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  "[W]hen a state law claim may fairly be viewed as an alternative means of recovering benefits allegedly due under ERISA, there will be preemption." Briscoe v. Fine, 444 F.3d 478, 498 (6th Cir. 2006) (citation omitted).  A Plaintiff may not evade ERISA's expansive preemption by "merely attach[ing] new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA."  Smith v. Provident Bank, 170 F.3d 609, 615 (6th Cir. 1999).  See also Harvey v. Life Ins. Co. of North America, 404 F. Supp. 2d 969, 975 (E.D. Ky. 2005).

Plaintiff claims that Central States, along with the other Defendants, breached their fiduciary duties owed Plaintiff under the common law of Kentucky, and that as the direct and proximate result, the pension payments for Plaintiff made by American Dairy were not fully and properly recorded such that Plaintiff has been denied the full benefits due him under the three Teamsters pension plans.  (Amended Complaint at ¶31, ¶32.)  Essentially, Plaintiff's state-law breach of fiduciary duty claim stems from the actions of Central States in monitoring, collecting and keeping records of employer pension contributions and in the

processing of Burklow's claim for benefits.  ERISA governs a plan's obligation to monitor, collect, and keep records of employer contributions.  As a result, Plaintiff's state law breach of fiduciary duty claim against Central States is preempted by ERISA.  See Smith, 170 F.3d at 613.

### D.  Underpayment of Pension Benefits

Plaintiff asserts a claim for recovery of underpayment of pension benefits. (Amended Complaint, Count IV.)  This claim is an extension of Plaintiff's claim for benefits pursuant to § 1132(a)(1)(B) or for breach of fiduciary duty pursuant to § 1132(a)(3).  For the reasons set forth above, this claim is dismissed as well.

### E.  Penalties for Failure to Supply Information

Plaintiff requests penalties be accessed against Central States for failure to produce requested information pursuant to 29 U.S.C. § 1132(c).  (Amended Complaint, Count V.)  Specifically, Plaintiff maintains that Central States failed to produce any pension fund account information regarding contributions made by American Dairy to Central National Life Insurance Pension Fund.

ERISA gives district courts discretion to impose up to $100 a day in penalties against "'[a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested ... within 30 days after such request.'" Crosby v. Rohn & Haas Co., 480 F.3d 423, 431-432 (6th Cir. 2007)(quoting 29 U.S.C. § 1132(c)(1)(B)); see also 29 C.F.R. § 2575.502c-1.

31

Plaintiff is not entitled to penalties under § 1132(c) against Central States for the conduct alleged.  From a review of the record, Central States complied with ERISA's information requirements.  Central States also complied with Burklow's discovery requests and subpoena for documents.  Additionally, Central States had no obligation to record or maintain any information related to contributions made by American Dairy to Central National as alleged by Burklow in the Amended Complaint.  For these reasons, Central States is granted summary judgment on Plaintiff's claim for penalties for failure to supply information.

### F.  Attorney's Fees

"In any action under this chapter ... the court in its discretion may allow reasonable attorney's fees and costs of action to either party."  29 U.S.C. § 1132(g)(1).  See also Moon v. Unum Provident Corp., 461 F.3d 639 (6th Cir. 2006).  Plaintiff has not sufficiently addressed this claim.  Additionally, since the Plaintiff has not been awarded any additional benefits, the Court finds the request for attorney's fees to be premature.  For this reason, the Court denies the motion for attorney's fees at this time.

### G.  Civil Penalties

Plaintiff also asks the Court to assess civil penalties against Central States for alleged violations of ERISA pursuant to 29 U.S.C. § 1132(i),(l)&(m).  These sections of ERISA permit the Secretary of Labor to assess these penalties, not the Court.  Plaintiff's claim for civil penalties is dismissed.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.     The motion by Defendant, Central States, for Judgment on the Administrative Record [DN 221] is **DENIED**.

2.     The motion by Defendant, Central States, for judgment on the pleadings, or in the alternative, for summary judgment [DN 220] is **GRANTED IN PART AND DENIED IN PART**.

3.     The motion by Defendant Central States to strike Plaintiff's jury demand [DN 222] is **MOOT.**

4.     The motion by Plaintiff, Jimmie Burklow, for partial summary judgment on issues of liability against Central States [DN 230] is **GRANTED IN PART AND DENIED IN PART**.  Defendant's denial of Plaintiff's claim is reversed and this matter is remanded to the Plan Administrator for a determination of Plaintiff's claim consistent with this Opinion.

5.     The motion by Plaintiff, Jimmie R. Burklow, for partial summary judgment against Central States as to Counts II and III of the Amended Complaint [DN 232] is **DENIED**.

cc: counsel of record

33